UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KARLA MUNOZ, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | CAUSE NO. 4:20-cv-01719 |
| CARROLLTON SPRINGS, LLC, MESA SPRINGS, LLC, ROCK SPRINGS, LLC, WESTPARK SPRINGS, LLC, AND WOODLAND SPRINGS, LLC, | § § § § § § | |
| Defendant. | § § | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff Karla Munoz, on behalf of herself and on behalf of all others similarly situated, ("Plaintiff") and Defendants Carrollton Springs, LLC, Mesa Springs, LLC, Rock Springs, LLC, Westpark Springs, LLC, and Woodland Springs, LLC ("Defendants") file this Joint Motion for Approval of Settlement and would respectfully show the Court the following:

### I.   INTRODUCTION

Plaintiff and Defendants have reached a confidential settlement of the pending dispute concerning unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides 152 current and former employees who were alleged to have not been paid for time spent working during their meal breaks compensation for possible wage and hour claims. On May 15, 2020, Plaintiff Karla Munoz filed this collective action lawsuit. The central allegation was that Defendants automatically deducted 30 minutes per shift for a meal period when that time should have been paid for by Defendants. (Doc. 1).

On August 13, 2020, this Court certified this case as a collective action. (Doc. 12). The Court certified the following class:

1

> All individuals holding a nurse or PCA position, who were compensated by the hour, who were subject to an automatic deduction for meal breaks while employed by Defendants, and who worked in Texas for at least one week during the two year period prior to the filing of this lawsuit to the present.

(*Id*.).

Afterwards, 151 individuals joined this case as Opt-In Plaintiffs. The settlement at issue resolves the claims of the Plaintiff and Class Members who chose to participate in this case.

During the discovery period, the Parties exchanged significant information as to the claims of the Plaintiff and Class Members and the defenses raised by Defendants. Defendants provided Plaintiffs' Counsel with pay and time records for the Class Members during the relevant time period covered by this lawsuit. Using these records, the Parties calculated the damages they believed could be available to the Class Members.

On December 7, 2020, the Parties attended private mediation with Courtenay Bass, a mediator with extensive experience in wage and hour litigation. During mediation, the Parties discussed the potential damages owed to the Plaintiff and Class Members, the applicable statute of limitations, and the merits of the case. Through the efforts of Ms. Bass, the Parties were able to reach a settlement. In particular, Ms. Bass made a mediator's proposal that both sides accepted. Now, the Parties request that the Court approve this settlement. The final terms of the settlement are reflected in the attached as Exhibit "1" to the Joint Motion to Seal which has been filed contemporaneously with this motion.

## II.     ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the

FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id., citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

Instead, most courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit). Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Food*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

The Parties agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case.

**A.     The terms of the settlement provide for substantial compensation for the claims raised in the lawsuit.**

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiff and Class Members. The damages that were calculated were based upon the actual records showing the amount paid to each Plaintiff and Class Members. Plaintiffs' Counsel then added 30 minutes per shift to determine the hours worked without the automatic meal deduction. If the Plaintiff's/Class Members' weekly hours totaled more than 40 hours for the week when the 30 minute meal period was added, the unpaid overtime wages were calculated for that week. The amount owed during the statutory period was then calculated for each Plaintiff and Class Member. The total amount owed for each individual was then added together to determine the amount owed for the Class.

The settlement is fair and reasonable because the amount is greater than they may have recovered during litigation. Each Plaintiff and Class Member will be entitled to a recovery from this settlement..

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case. Plaintiff argued that she and the Class Members were entitled ot be compensated during the 30-minute meal period. Defendants countered that the meal period was not compensable and that if, the Plaintiff/Class Members worked during the meal period, they could have reported it to Defendants pursuant to a well-established pay correction reporting procedure and would have been paid for the time. Further, the Parties disagreed as to whether the Plaintiff could satisfy her burden to demonstrate that Defendants acted willfully, which in turn affects whether Plaintiff/Class Members could recover damages for two (2) years or three (3) years prior to the filing of the Complaint. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether

Defendants would satisfy their burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Class Members.

More importantly, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In exchange for these payments, the Plaintiff and Class Members will agree to release Defendants from any and all claims they may have related to wages, back pay and overtime.

**B.      The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The proposed Settlement Agreement is fair to the Plaintiff and Class Members because it provides for a settlement for the Plaintiff and Class Members with damages calculated based upon the actual records for the Class, with each Class Member allocated a separate amount based upon his/her dates of employment, hours worked, and total pay.

The settlement allows each Class Member to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages available to all Class Members in the aggregate, net of attorneys' fees and costs. That is, hypothetically, if a Class Member is owed $2,000 and the total settlement amount is $100,000, his/her proportionate share of the settlement is two percent (2%) and he/she will receive that percentage of the settlement proceeds after fees and costs have been deducted. The pro rata allocation to each Class Member is set forth in the Settlement Agreement.

As part of the settlement, the Parties agreed to a Class Representative Award for Plaintiff Karla Munoz. Otherwise known as a "service payment" or "incentive award," this amount is in

addition to her pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the Class Members, the valuable contributions Ms. Munoz made throughout the litigation, particularly in its initial phases, Plaintiff submits that the incentive award is reasonable. Further, Plaintiff has agreed to a general release in exchange for the payment, which serves as further consideration.

    **C.**    **The Parties have agreed on a fair and reasonable notice plan to administer the settlement.**

The Parties have agreed to self-administer this settlement. Defendants will mail to Plaintiffs' Counsel the individual settlement checks within 30 days of approval of the settlement. That is all Class Members will receive a payment from this settlement. The release of claims to be executed by the Class Members is a limited release of wage and hour claims only and not a broad release of all imaginable claims. This release will be identified on the back of the settlement checks. Depositing the settlement checks with the release on the back will constitute effective release of the claims. *See, e.g., Fontenot v. Saybolt*, No. Civ. A. 4:15-cv-02113 (S.D. Tex. 2016).

In *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013), the court approved final settlement of a FLSA wage action with a similar process for releasing FLSA claims through check cashing:

> Under the Settlement Agreement, the Named Plaintiffs, the FLSA Class Members who cash their settlement checks, and the California Class Members release all claims against Pro Unlimited and Juniper that were alleged in this case or that reasonably arise out of the facts alleged in the case.

*Id.* at *3. Likewise, in *Franco v. Ruiz Food Products, Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012), the court approved a settlement of a hybrid class and collective claim where class members opted in and released FLSA claims by endorsing settlement checks with the following language on the backside: "By endorsing this check, I consent to join

6

the Class in Franco, et. al. v. Ruiz Food Products, Inc., elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement." *Id.* The agreement further provided that, "Class Members must only cash one Settlement Award check to opt-in to the Class." *Id.* Lastly, the court made it clear it was approving a settlement agreement that provided, "waivers of claims expressly under the FLSA shall only be binding on Settlement Class members who opted-in as provided above." *Id*. at *25.

Other courts likewise have approved this procedure of opting in and releasing FLSA claims. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *1 n.* (M.D. Fla. Jan. 28, 2015) ("By endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation, through the date on which the Court grants preliminary approval of the settlement."); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y. Mar. 25, 2014) ("[T]he FLSA class members are defined as delivery workers employed by the defendants between April 16, 2010, and August 21, 2013, and who endorse their settlement checks or have filed a consent to join the lawsuit."); *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014) ("Defendants will not be released from the FLSA claims of FLSA collective members who do not endorse their settlement checks.").

This process is fair and equitable to all Parties and eliminates the need for a separate claim form.

     **D.**     **The attorneys' fees sought are fair and reasonable.**

Additionally, the amount sought by Plaintiff/Class Member counsel for attorneys' fees is fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Plaintiffs' Counsel investigated the claims, , analyzed pay data, managed communication with all Class Members, and performed other work that resulted in a settlement.

When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In determining the reasonableness of the requested attorney's fee, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is much higher. Under Plaintiff's theory of the case, Plaintiff's Counsel have prevailed in securing compensation for its clients. They acquired a class settlement that provides recovery for each Class Member. Under Defendant's theory, the Class Members would be owed close to zero.

The average recovery to each Class Member is greater than average recoveries in other wage-and-hour settlements. A 2015 study of trends in wage and hour settlements compiled by NERA found that the overall median per-plaintiff settlement value in wage-and-hour cases from 2007 to 2015 was $2,576. (*See* Exhibit "2" at pages 5 and 6). Notably, this study examined wage-and-hour settlements that released claims and penalties under various state laws. Based on the NERA study, the per-person result in this case is favorable in comparison to typical settlements.

*See also Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (reasoning that "the results obtained for the Class Members were very favorable" where the average recovery was $183.70); *Ontiveros v. Zamora*, 2014 WL 3057506, at *14 (E.D. Cal. July 7, 2014) (observing that average recovery of $6,000 was "a generous amount" for a wage and hour case case, and collecting cases approving far lower per-class member averages); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (reasoning that average recovery of over $2,000 per Plaintiff was a "favorable" result). Again, under Plaintiffs' theory of the case, Plaintiffs' Counsel has more than successfully prevailed.

Plaintiffs' Counsel have acquired a class settlement that provides for a reasonable estimate of damages given the facts of the case and the relative merits of Plaintiff's claims and Defendants' possible defenses. Under Defendants' theory, the Plaintiffs could be owed zero. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff/Class members even had viable claims. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damage awards available to the Class Members in this case. Thus, the work of Plaintiff's Counsel provided a significant benefit to the Class Members.

Also, the attorneys' fees requested by Plaintiff's counsel should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. Had this case not settled, Plaintiff's Counsel

9

would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendants could have succeeded. Therefore, the Class Members were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here.

E. **The settlement should be approved by the Court.**

The terms of the settlement have been approved by Plaintiff Munoz, her counsel, Defendants, and Defendants' counsel. The settlement was negotiated at arms' length with the assistance of a mediator skilled in mediating wage and hour disputes and was the sum proposed in the mediator's proposal. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The

10

settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Class Members. Each Class Member will receive back wages and liquidated damages under federal law without the risk or expense of trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III.   CONCLUSION

The terms of the settlement have been approved by Plaintiff, her counsel, Defendants, and Defendants' counsel. The settlement was negotiated at arms' length with the assistance of a highly qualified wage and hour mediator. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, the Parties jointly request that the Court approve the FLSA settlement.

For the foregoing reasons, the Parties respectfully request that the Court enter an order approving the Parties' Settlement Agreement. A proposed Order is attached for the Court's consideration.

Respectfully submitted,

| | |
|---|---|
| */s/ Don J. Foty* | */s/ Sherry L. Travers* |
| Don J. Foty | Sherry L. Travers (Attorney-in-Charge) |
| State Bar No. 24050022 | State Bar No. 00793097 |
| Hodges & Foty, LLP | stravers@littler.com |
| 4409 Montrose Blvd., Suite 200 | Jeremy W. Hawpe |
| Houston, Texas 77006 | State Bar No. 24046041 |
| 713.523.0001 | jhawpe@littler.com |
| 713.523.1116 (Fax) | Ross G. Reyes |
| Email: dfoty@hftrialfirm.com | State Bar No. 24105707 |
| | rgreyes@littler.com |
| **ATTORNEY FOR PLAINTIFF AND CLASS MEMBERS** | LITTLER MENDELSON, P.C. |
| | 2001 Ross Avenue, Suite 1500 |
| | Lock Box 116 |
| | Dallas, Texas 75201 |
| | 214.880.8100 |
| | 214.880.0181 Fax |
| | **ATTORNEYS FOR DEFENDANTS** |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been filed with the Court's electronic case filing system on March 30, 2021, which will forward a copy to Plaintiffs.

*/s/ Sherry L. Travers*
Sherry L. Travers

4824-3859-9394.1 / 108147-1001